UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GEOSOLUTIONS B.V., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SINA.COM ONLINE, et al.,<br><br>Defendants. | Case No. 5:21-cv-08019-EJD<br><br>**ORDER GRANTING MOTIONS TO DISMISS WITH LEAVE TO AMEND; DENYING AS MOOT MOTION FOR LEAVE TO FILE SUPPLEMENTARY MATERIALS; DENYING AS MOOT MOTION FOR DISCOVERY STAY**<br><br>Re: ECF Nos. 26, 27, 50, 67, 84, 93, 118 |

Plaintiffs GeoSolutions B.V. and GeoSolutions Holdings N.V. (collectively, "GeoSolutions" or "Plaintiffs") bring this action against thirteen separate corporate entities within the Chinese media conglomerate that Plaintiffs refer to as the "Sina Group," and against two individual executives within the Sina Group. Before the Court are five separate motions to dismiss. Four of the motions (ECF Nos. 26, 50, 67, 84) have been brought by eight corporate defendants (the "Foreign Defendants")[1] and Cao Guowei, aka Charles Chao, who argue that the Court lacks personal jurisdiction over them. One motion (ECF No. 27) has been brought by Sina.com Online and Weibo R&D Limited (collectively, the "California Defendants," and together with the Foreign Defendants and Charles Chao, the "Defendants"[2]), who argue that Plaintiffs' complaint fails to state a claim. Also before the Court is Plaintiffs' motion for leave to file

---

[1] The Foreign Defendants are as follows: Weibo Corporation; Sina Corporation; New Wave MMXV Limited; Sina Hong Kong Limited; Beijing Sina Internet Information Service Company Ltd.; Sina (Beijing) Information Technology Co. Ltd.; Sina.com Technology (China) Co., Ltd.; and Sina Group Holding Company Limited.

[2] Four defendants have not yet appeared: GyPSii (Shanghai) Co., Ltd.; Beijing New Media Technology Information Company; Beijing Weimeng Technology Co., Ltd.; and Wang Gaofei.

Case No.: 5:21-cv-08019-EJD
ORDER GRANTING MOTS. TO DISMISS; DEN. MOT. FOR LEAVE TO FILE; DEN. MOT. FOR DISCOVERY STAY

1

supplementary materials (ECF No. 93) and Defendants' motion to stay discovery pending this Court's order on the motions to dismiss (ECF No. 118).  Having considered the parties' submissions and their arguments at hearing, the Court GRANTS each of the motions to dismiss and DENIES AS MOOT Plaintiffs' motion for leave to file and Defendants' motion for discovery stay.

## I. BACKGROUND

### A. The Parties

GeoSolutions B.V. is a Netherlands technology company that developed and commercialized location-based services ("LBS") technology for use in social networking services. Compl., ECF No. 1-2 ¶ 15.  GeoSolutions B.V. is fully owned by GeoSolutions Holdings N.V., a Netherlands holding company.  *Id.* ¶ 14.

The Sina Group is a Chinese media conglomerate which operates the social media app, Weibo.  *Id.* ¶ 2.  The corporate defendants are each entities under the Sina umbrella, and various subsidiary and contractual relationships exist between them.  *Id.* ¶¶ 13, 16-27.  Two of the corporate defendants, Sina.com Online and Weibo R&D Limited, are California corporations with principal places of business in Palo Alto, California.  *Id.* ¶¶ 18-19.  The remaining corporate defendants are a mix of companies incorporated in China, Hong Kong, the Cayman Islands, and the British Virgin Islands, and with principal places of business in China and Hong Kong.  *Id.* ¶¶ 16-17, 20-27.

Charles Chao is an individual who is a citizen and resident of China.  *Id.* ¶ 28.  He is an executive of various Sina entities and serves as the "apex" of the Sina Group.  *Id.* ¶¶ 28, 44.  Wang Gaofei is an individual who is a citizen and resident of China.  *Id.* ¶ 29.  He is also an executive of various Sina entities.  *Id.*

### B. Factual Background

GeoSolutions was founded in the early 2000s to develop a mobile application that allowed its users to track and share their locations and activities.  Compl. ¶ 49.  To that end, GeoSolutions

Case No.: 5:21-cv-08019-EJD
ORDER GRANTING MOTS. TO DISMISS; DEN. MOT. FOR LEAVE TO FILE; DEN. MOT. FOR DISCOVERY STAY

2

created the GyPSii mobile app, through which users could search for and identify their contacts by location in real time. *Id.* ¶ 50. GeoSolutions launched its GyPSii app for the 2008 Beijing Olympics via a wholly owned subsidiary, GyPSii (Shanghai) Co., Ltd. ("GyPSii Co."). *Id.* ¶¶ 50-51. This was one of the earliest implementations of LBS technology for use in social networking, predating similar efforts by applications such as Foursquare, Instagram, and Facebook. *Id.* The launch was a success, and the GyPSii app attracted interest from several large brands as an advertising platform. *Id.*

As some social networking companies, including GeoSolutions, worked on developing LBS technologies, others sought to build microblogging services similar to Twitter. *Id.* ¶ 52. Several competing microblogs launched in China but most were shut down following riots in July 2009. *Id.* The Sina Group stepped into the resulting void, launching its Weibo microblogging service in August 2009. *Id.* ¶ 53. Although Weibo quickly captured Chinese market share, it faced monetization challenges. *Id.* To address those challenges, the Sina Group decided to target an LBS social networking company for acquisition or partnership, and it selected GeoSolutions as its preferred partner. *Id.*

In August 2010, Sina.com Technology (China) Co., Ltd. ("STC") signed a memorandum of understanding with GyPSii Co. in which they agreed to create a new company, as a joint venture, to provide LBS services to Sina entities using GeoSolutions' technology. *Id.* ¶ 55. In November 2010, the terms of the deal were modified. *Id.* ¶ 56. Rather than create a new company, the parties agreed to transform GyPSii Co. from a wholly owned subsidiary of GeoSolutions into the contemplated joint venture, with GeoSolutions taking a 40% stake while Sina Hong Kong Ltd. ("Sina HK")—which was taking the place of STC in the deal—would hold a 60% stake. *Id.* The parties finalized their joint venture agreement in June 2011, along with a license agreement allowing GyPSii Co. to hold a license for GeoSolutions' LBS technology, and in July 2011 they signed articles of association governing the joint venture. *Id.* ¶¶ 58, 60. Soon thereafter, the Sina Group's Weibo microblogging service began to incorporate new LBS features

and monetize their use. *Id.* ¶ 61. Sina entities also continued to enter additional contracts with GyPSii Co. Throughout 2012, Beijing Sina Internet Information Service Company Ltd. and Beijing New Media Technology Information Company executed agreements with GyPSii Co. to publish GeoSolutions' LBS code and transfer more LBS applications to Weibo. *Id.* ¶ 63.

Allegedly, Sina HK did not uphold its end of the joint venture agreement. By the middle of 2014, GeoSolutions discovered data suggesting that Sina entities were using GeoSolutions' LBS technology without paying GyPSii Co., therefore denying GeoSolutions fair compensation for its stake in GyPSii Co. *Id.* ¶ 64. GeoSolutions demanded an audit and changes to the contractual relationship between themselves, GyPSii Co., and Sina HK, but still entered into a renewed license agreement in August 2014, at least in part due to the promise of an upfront "minimum license fee" and ability to approve all future sublicenses of its LBS technology. *Id.* ¶¶ 60, 64, 66.

According to GeoSolutions, Sina HK failed to honor those new contractual promises as well, and permitted GeoSolutions to conduct only a "sham audit" that concealed how Sina entities had been using GeoSolutions' LBS technology. *Id.* ¶ 67. GeoSolutions then commenced arbitration proceedings against Sina HK before a tribunal in Amsterdam, which resulted in a $115 million award to GeoSolutions.[3] *Id.* ¶¶ 67-68. The arbitration involved document disclosures, written submissions, and witness testimony through which GeoSolutions allegedly discovered that the Sina Group had created a "shadow LBS department." *Id.* ¶¶ 54, 68. Purportedly, Charles Chao, Wang Gaofei, and other Sina executives developed the idea for this shadow department while negotiating with GeoSolutions regarding the joint venture agreement. *Id.* ¶ 55. They placed Wang Gaofei in charge of the department and hired engineers to misappropriate GeoSolutions' LBS technology and know-how with the aim of ultimately cutting GeoSolutions out of financial gains from the joint venture. *Id.* ¶¶ 54-55, 59.

---

[3] Since Plaintiffs filed their complaint, the Amsterdam Court of Appeal has set aside the arbitration award against Sina HK. Statement of Recent Decision, ECF No. 83.

Case No.: 5:21-cv-08019-EJD
ORDER GRANTING MOTS. TO DISMISS; DEN. MOT. FOR LEAVE TO FILE; DEN. MOT. FOR DISCOVERY STAY

4

### C. Procedural History

Plaintiffs initially filed suit against Defendants in Santa Clara County Superior Court on March 15, 2021. *See* Compl. Following Plaintiffs' attempt to serve the California Defendants by mail on September 13, 2021, the California Defendants removed the case to federal court on October 13, 2021. Notice of Removal, ECF No. 1. All Defendants who subsequently appeared have since filed joinders and consented to the removal. ECF Nos. 22, 42, 62, 77. On December 20, 2021, the California Defendants filed a motion to dismiss for failure to state a claim. ECF No. 27. Between December 20, 2021 and September 30, 2022, as they made their appearances in this case, the Foreign Defendants and Mr. Chao filed four separate motions to dismiss for lack of personal jurisdiction. ECF Nos. 26, 50, 67, 84. The Court held a hearing on the motions to dismiss on February 22, 2023. ECF No. 103.

## II. MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION

### A. Legal Standard

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction. *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 741 (9th Cir. 2013). When the motion is based on written submissions rather than an evidentiary hearing, the plaintiff "need only make a prima facie showing of jurisdictional facts." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011) (citation omitted). The plaintiff may not "'simply rest on the bare allegations of its complaint,' but uncontroverted allegations in the complaint must be taken as true." *Id.* (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)). As such, the Court may not assume the truth of allegations that are contradicted by an affidavit, *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977), and must resolve factual disputes in favor of the plaintiff. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). Moreover, "[t]he jurisdictional inquiry must decouple defendants, considering whether each individual defendant has had sufficient 'minimum contacts' with the forum state to justify an exercise of jurisdiction over that defendant." *Burri Law PA v. Skurla*, 35 F.4th 1207, 1213 (9th Cir. 2022); *see also Calder v. Jones*, 465 U.S.

Case No.: 5:21-cv-08019-EJD
ORDER GRANTING MOTS. TO DISMISS; DEN. MOT. FOR LEAVE TO FILE; DEN. MOT. FOR DISCOVERY STAY

5

783, 790 (1984) ("Each defendant's contacts with the forum State must be assessed individually.").

When there is no federal statute authorizing personal jurisdiction, a court applies the law of the state in which it sits. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). In this case, California's long-arm statute applies. Cal. Code Civ. Proc. § 410.10. The long-arm statute "is coextensive with federal due process requirements," so the jurisdictional analysis collapses into the due process analysis. *Schwarzenegger*, 374 F.3d at 800-01. Due process, in turn, requires that an out-of-state defendant have "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotation marks omitted). Personal jurisdiction may be general, which permits a court to hear "any and all claims against" a defendant, or specific, which is based on the connection between the forum state and underlying controversy. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

### B. Foreign Defendants

#### 1. General Jurisdiction

The paradigmatic bases for general jurisdiction are the domicile for individuals, and the place of incorporation or principal place of business for corporations. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Only in extraordinary cases, where contacts are "so constant and pervasive 'as to render [a defendant] essentially at home in the forum State,'" may a court exercise general jurisdiction in a forum other than those identified above. *Id.* at 122 (quoting *Goodyear*, 564 U.S. at 919). An exception to these rules exists where two or more defendants are alter egos of each other such that the defendants are not truly separate entities and the contacts of one defendant may be imputed to the other. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1070-71 (9th Cir. 2015). To establish an alter ego relationship, a plaintiff "must make out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no

longer exist and (2) that failure to disregard [their separate identities] would result in fraud or injustice." *Id.* at 1073 (citation and internal quotation marks omitted; alterations in original). "The standard for personal jurisdiction under an alter ego theory is lower than the standard for liability under an alter ego theory," *FTC – Forward Threat Control, LLC v. Dominion Harbor Enters., LLC*, No. 19-cv-06590-EJD, 2020 WL 5545156, at *7 (N.D. Cal. Sept. 16, 2020) (citation omitted), but conclusory allegations are insufficient. *Cisco Sys. Inc., v. Link US, LLC*, No. 18-cv-07576-CRB, 2019 WL 6682838, at *3 (N.D. Cal. Dec. 6, 2019).

Here, Plaintiffs do not argue that any of the Foreign Defendants are at home in California or that they have such pervasive contacts that they are essentially at home.[4] Instead, they rely on an alter ego theory, asserting that each of the Foreign Defendants are alter egos of each other and of the California Defendants. Compl. ¶ 31; *see also, e.g.*, Opp'n to Sina HK's Mot. to Dismiss, ECF No. 71, at 7-11.[5] They argue that the California Defendants are at home in California, where they are registered as corporations and maintain their principal places of business, Compl. ¶¶ 18-19, so the alter ego theory allows them to impute general jurisdiction from the California Defendants to the Foreign Defendants. *E.g.*, Opp'n to Sina HK's Mot. to Dismiss 9-10.

### a. The Sina Group's Variable Interest Entity Structure

Plaintiffs' primary argument for establishing their alter ego theory is that the Sina Group operates a variable interest entity ("VIE") structure, which "blurs the corporate distinctions" among Sina entities. Compl. ¶¶ 37-43; Hr'g Tr., ECF No. 105, at 14:6-23. The VIE structure is a mechanism that allows foreign-owned companies to operate in China despite laws restricting foreign ownership of Chinese businesses in certain industries. Compl. ¶¶ 37-38. By contracting with entities known as VIEs, foreign-owned companies are able to exercise managerial control and

---

[4] Counsel for Plaintiffs disclaimed any reliance on those arguments at hearing, Hr'g Tr., ECF No. 105, at 14:6-23, and Plaintiffs' briefing does not raise those arguments either.

[5] The arguments raised by Plaintiffs in opposition to the Foreign Defendants' motions to dismiss are substantially similar for each motion. When discussing Plaintiffs' arguments, the Court therefore cites to only a single opposition by way of example.

Case No.: 5:21-cv-08019-EJD
ORDER GRANTING MOTS. TO DISMISS; DEN. MOT. FOR LEAVE TO FILE; DEN. MOT. FOR DISCOVERY STAY

7

1    receive the VIEs' revenues. *Id.* ¶ 37. According to Foreign Defendants, a VIE structure requires
2    at least three companies: a holding company incorporated outside China; a company incorporated
3    inside China that is wholly owned by the foreign holding company (a "wholly foreign owned
4    enterprise," or "WFOE"); and a VIE entity incorporated in China and owned by Chinese nationals.
5    Mot. to Dismiss ("Chao Mot."),[6] ECF No. 50, at 2. The VIE holds the permits and licenses
6    required to conduct business in China and contracts with the WFOE. *Id.*

In Plaintiffs' view, they may plead the existence of an alter ego relationship by pleading the existence of a VIE structure. Plaintiffs cite no case law in support of their proposition, but the Court need not decide whether they are correct as a matter of law because Plaintiffs have failed to sufficiently plead the factual premise of their argument. Plaintiffs seek to impute the California Defendants' contacts to the Foreign Defendants, so they must at a minimum plead that the California Defendants were part of a VIE structure with some or all of the Foreign Defendants. While Plaintiffs allege that the Sina Group uses VIEs to conduct business in *China*, Compl. ¶¶ 37-38, 40-42, the California Defendants are located in the *United States*. *Id.* ¶¶ 18-19. Thus, the California Defendants are not VIEs, and Plaintiffs conceded as much at hearing. Hr'g Tr. 6:8-13. Moreover, Plaintiffs have not pleaded any facts showing that the California Defendants had any other role in a VIE structure with the Foreign Defendants.

Recognizing this problem, Plaintiffs argue that the entirety of the Sina Group is one large "VIE structure." Hr'g Tr. 6:14-19; Compl. ¶ 43. Allegedly, this structure is a "deceptive and convoluted style of corporate organization [which] blurs the corporate distinctions among" Sina entities and leads the Sina Group to "rarely respect[] the purported separateness of its ostensibly distinct entities." Compl. ¶ 43. Plaintiffs cannot survive a motion to dismiss simply by labelling all of the Sina Group as a "VIE structure." *Reynolds v. Binance Holdings Ltd.*, 481 F. Supp. 3d 997, 1005 (N.D. Cal. 2020) ("[A] plaintiff must offer more than labels and conclusions."). For

---

[6] This motion was filed by Charles Chao, Sina (Beijing) Information Technology Co. Ltd., and Sina.com Technology (China) Co., Ltd.

Case No.: 5:21-cv-08019-EJD
ORDER GRANTING MOTS. TO DISMISS; DEN. MOT. FOR LEAVE TO FILE; DEN. MOT. FOR DISCOVERY STAY

8

one, the argument does not correct the deficiencies identified above as to the California Defendants because Plaintiffs do not identify how the California Defendants participated in the alleged VIE structure. Further, Plaintiffs do not explain what it means for a large conglomerate composed of multiple entities to be a VIE structure. Such a structure is a method of control by one entity, the WFOE, over another, the VIE. Compl. ¶ 37. But the complaint contains no detail about which Sina entities are VIEs and which are WFOEs, leaving the Court to guess which entities are which and how they are interrelated. Finally, while Plaintiffs aver that the Sina Group conducts business in China using VIEs, Compl. ¶¶ 37-42, it does not follow from that fact that *all* Sina entities participate in controlling those VIEs. The Court cannot, on the basis of Plaintiffs' sweeping allegation that the whole Sina Group is a VIE structure, conduct the individualized jurisdictional analysis that *Burri Law* requires. Therefore, Plaintiffs have failed to plead facts supporting their VIE theory.

### b. Unity of Interest

The Court next turns to the traditional alter ego test described in *Ranza*. When analyzing the unity of interest prong of the alter ego test, courts have looked to nine factors:

> (1) the commingling of funds and other assets of the entities, (2) the holding out by one entity that it is liable for the debts of the other, (3) identical equitable ownership of the entities, (4) use of the same offices and employees, (5) use of one as a mere shell or conduit for the affairs of the other, (6) inadequate capitalization, (7) disregard of corporate formalities, (8) lack of segregation of corporate records, and (9) identical directors and officers.

*Yih v. Taiwan Semiconductor Mfg. Co.*, No. 20-cv-04184-EJD, 2020 WL 6290377, at *5 (N.D. Cal. Oct. 27, 2020) (citation omitted). A court need not find that every factor is present to determine that there is a unity of interest between two entities, *Updateme Inc. v. Axel Springer SE*, No. 17-cv-05054-SI, 2018 WL 1184797, at *10 (N.D. Cal. Mar. 7, 2018), but it must be able to conclude that "[one entity] controls the [other] to such a degree as to render the latter the mere instrumentality of the former." *Ranza*, 793 F.3d at 1073 (citation omitted).

As explained above, Plaintiffs must impute the California Defendants' contacts to the

Case No.: 5:21-cv-08019-EJD
ORDER GRANTING MOTS. TO DISMISS; DEN. MOT. FOR LEAVE TO FILE; DEN. MOT. FOR DISCOVERY STAY

9

Foreign Defendants in order to establish general jurisdiction via an alter ego theory. Much like with the VIE theory, Plaintiffs plead few facts connecting the California Defendants to the Foreign Defendants. Instead, they offer a laundry list of allegations—many of which are conclusory or unrelated to the California Defendants—without attempting to fit them into the nine-factor framework. *E.g.*, Opp'n to Chao Mot., ECF No. 54, at 11-13. Applying that framework, the Court concludes Plaintiffs have not sufficiently alleged that either of the California Defendants has a unity of interest with any of the Foreign Defendants.

Regarding the third and ninth factors, Plaintiffs plead that Mr. Chao owns, or occupies the officer and director positions of, various Sina entities, including that he is the CEO of Sina.com Online, one of the California Defendants. Compl. ¶¶ 20, 28, 36, 46. They also allege that Sina.com Online is a wholly owned subsidiary of Sina Corporation. Compl. ¶ 35. Such allegations of "[t]otal ownership and shared management personnel" are insufficient on their own to establish the required level of control. *Ranza*, 793 F.3d at 1073. And Plaintiffs' remaining allegations take them no further. Plaintiffs briefly address the fourth factor by alleging that Sina.com Online shares an address with Weibo R&D Limited. Compl. ¶ 48. Yet both are *California Defendants*, so their common address does not affect whether they have a unity of interest with the *Foreign Defendants*. Plaintiffs also appear to argue under the fifth factor that Sina.com Online is merely a conduit for other Sina entities because Sina.com Online operates a shared internet portal for all Sina businesses. Compl. ¶ 18. But operating a shared website merely shows that Sina.com Online assisted with administrative functions for the broader Sina Group, not that any other Sina entity had control over Sina.com Online or vice versa. *Reynolds*, 481 F. Supp. 3d at 1006-07.

The only other allegations which touch on the California Defendants are too conclusory to support unity of interest. *See* Compl. ¶¶ 35 (Sina entities "fail to respect corporate formalities and instead constitute a single, coordinated enterprise."), 43 ("This deceptive and convoluted style of corporate organization blurs the corporate distinctions among [Sina entities]. . . . The Sina Group

Case No.: 5:21-cv-08019-EJD
ORDER GRANTING MOTS. TO DISMISS; DEN. MOT. FOR LEAVE TO FILE; DEN. MOT. FOR DISCOVERY STAY
10

rarely respects the purported separateness of its ostensibly distinct entities in operation."). Making blanket allegations across fifteen separate defendants does not satisfy a plaintiff's burden to show personal jurisdiction exists as to *each* defendant. *See Burri Law*, 35 F.4th at 1213. Similarly, the allegation that all Sina employees understand they "work for the Sina Group as a whole" and report to supervisors at other entities provides no detail as to which specific defendants may share employees. Compl. ¶ 44.

As Plaintiffs failed to plead unity of interest, the Court need not address the "fraud or injustice" prong of the alter ego test. *Ranza*, 793 F.3d at 1075 n.9. The Court finds that Plaintiffs have not sufficiently pleaded general jurisdiction under their alter ego theory.[7]

### 2. Specific Jurisdiction

In the Ninth Circuit, courts apply a three-prong test to determine whether a non-resident defendant has "minimum contacts" justifying the exercise of specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). A plaintiff bears the burden of satisfying the first two prongs. *Id.* If it successfully does so, the burden shifts to the defendant to "present a compelling case" that exercising jurisdiction would be unreasonable. *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)). But if a plaintiff fails to establish either of the first two prongs, "the jurisdictional inquiry ends and the

---

[7] Sina (Beijing) Information Technology Co., Ltd. ("SBIT") also argues that it is not subject to general jurisdiction because it dissolved in 2008. Chao Mot. 7. Plaintiffs dispute that SBIT has dissolved. Opp'n to Chao Mot. 1-2. However, the Court does not address this factual disagreement now because Plaintiffs have failed to plead general jurisdiction under their alter ego theory.

Case No.: 5:21-cv-08019-EJD
ORDER GRANTING MOTS. TO DISMISS; DEN. MOT. FOR LEAVE TO FILE; DEN. MOT. FOR DISCOVERY STAY
11

case must be dismissed." *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008).

Here, the Foreign Defendants argue that Plaintiffs' claims do not arise out of or relate to the Foreign Defendants' forum contacts—in other words, that there is not an adequate nexus—because the forum contacts are not but for causes of Plaintiffs' alleged injuries. *E.g.*, Chao Mot. 15-16. The Court agrees. As an initial matter, because Plaintiffs have failed to plead their alter ego theory, none of the contacts of any one defendant may be imputed to another. Consequently, the California Defendants' contacts are not relevant to the specific jurisdiction analysis for the Foreign Defendants. Setting aside the California Defendants' contacts, Plaintiffs have pleaded only two other contacts between any defendant and California. First, the servers storing the technology which was allegedly misappropriated from Plaintiffs are either in Santa Clara, California or Palo Alto, California. Compl. ¶¶ 48, 116. It is not clear who owns these servers, but the complaint appears to attribute ownership to Sina Corporation and Weibo Corporation. *Id.* ¶ 48. Second, there are 450,000 users of the Weibo service in California. *Id.* However, that contact cannot be attributed to any Foreign Defendant because Beijing Weimeng Technology Co., Ltd., a defendant who has not yet appeared in this case, distributes and markets the Weibo app in the United States. *Id.* ¶ 25. Plaintiffs have failed to plead forum contacts for any of the six Foreign Defendant not identified above, so they have failed to establish specific jurisdiction as to those six.

Even as to Sina Corporation and Weibo Corporation, Plaintiffs have not established that there is an adequate nexus between the forum contacts of those two defendants and Plaintiffs' claims. To show that claims arise out of or relate to forum contacts, a plaintiff may demonstrate that it would not have been injured but for those forum contacts. *Nat. Gas Antitrust Litig.*, 715 F.3d at 742. Here, there is no indication that the presence of servers in California was a but for cause of the misappropriation of Plaintiffs' LBS technology. There is no allegation that the servers provided a means for the misappropriation of Plaintiffs' LBS technology, and the mere storage of that technology on the servers is too far removed from the alleged wrongdoing to

Case No.: 5:21-cv-08019-EJD
ORDER GRANTING MOTS. TO DISMISS; DEN. MOT. FOR LEAVE TO FILE; DEN. MOT. FOR DISCOVERY STAY

12

establish but for causation. *See Ross v. Abbott Vascular Inc.*, No. 19-cv-03794-JST, 2020 WL 4934487, at *7 (N.D. Cal. Apr. 6, 2020) ("[C]ontacts based solely on uploading information to company-wide . . . servers housed in the United States are too attenuated to establish minimum contacts or comport with due process.").

Plaintiffs argued for the first time at hearing that the Supreme Court's decision in *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017 (2021), makes clear that but for causation is not required to establish an adequate nexus, and that the nexus requirement can be satisfied if claims are sufficiently "related to" forum contacts. Hr'g Tr. 18:9-23. In light of the recent decision in *Yamashita v. LG Chem, Ltd.*, No. 20-17512, __ F.4th __, 2023 WL 2374776 (9th Cir. Mar. 6, 2023), in which the Ninth Circuit interpreted *Ford Motor*, Plaintiffs appear to be correct that an alternate test for nexus exists. *Yamashita* clarified that but for causation is the test for whether claims "arise out of" forum contacts, but a plaintiff may alternatively establish a sufficient nexus by showing that its claims "relate to" forum contacts. *Id.* at *5. Nonetheless, Plaintiffs did not argue the "related to" test in their briefing, and the Court will not consider arguments raised for the first time at hearing. *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1061 (N.D. Cal. 2021) (collecting cases).

Plaintiffs have not met their burden to show that their claims arose out of or are related to any of Foreign Defendants' forum contacts. Accordingly, the Court concludes that Plaintiffs have not established specific jurisdiction and need not address purposeful availment or substantial justice.

\*   \*   \*

Because Plaintiffs have not met their pleading burden as to either general jurisdiction or specific jurisdiction, the Court GRANTS the Foreign Defendants' motions to dismiss for lack of personal jurisdiction.

**C.   Charles Chao**

Mr. Chao argues, and Plaintiffs concede, that he is not subject to general jurisdiction in this

Case No.: 5:21-cv-08019-EJD
ORDER GRANTING MOTS. TO DISMISS; DEN. MOT. FOR LEAVE TO FILE; DEN. MOT. FOR DISCOVERY STAY

13

Court under a theory that he is domiciled in California. Chao Mot. 5; Hr'g Tr. 14:6-23. He also argues that he is protected from any other basis for personal jurisdiction under the fiduciary shield doctrine. Chao Mot. 5. In response, Plaintiffs contend that the fiduciary shield doctrine is not compatible with the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783. Opp'n to Chao Mot. 9 n.7. The Court need not address the continued viability of the fiduciary shield doctrine, though, because Mr. Chao's arguments regarding the fiduciary shield point to a more fundamental flaw with Plaintiffs' theory of personal jurisdiction: there are insufficient contacts between Mr. Chao and California.

First, as Mr. Chao argues, he is not in an alter ego relationship with either of the California Defendants. Chao Mot. 5-6. Excluding generalized allegations about the Sina Group as a whole, which do not meet the requirement of decoupling defendants for purposes of jurisdictional analysis, the only allegation of a unity of interest between Mr. Chao and either California Defendant is that he controls Sina.com Online. Compl. ¶ 35. This lone allegation of total ownership, unsupported by any other allegations, does not establish an alter ego relationship. *Ranza*, 793 F.3d at 1073. Thus, general jurisdiction cannot be imputed from the California Defendants to Mr. Chao.

Second, Mr. Chao argues that there is no connection between his involvement with the underlying controversy and California. Chao Mot. at 6. The Court addressed much of this argument when considering whether it had specific jurisdiction over the Foreign Defendants. Because the Court found earlier that Plaintiffs' claims were not sufficiently connected to California, even if Mr. Chao had personally directed or carried out every action forming Plaintiffs' claims, he still would not be subject to personal jurisdiction. The only additional contact that the Court has not yet addressed is that Mr. Chao "visited and/or directly communicated with the Sina Group entities within the territorial jurisdiction of this Court to further the factual basis of the claims described [in the complaint]." Compl. ¶ 28. This vague and conclusory allegation provides no factual support describing what those communications were or how they furthered the

Case No.: 5:21-cv-08019-EJD
ORDER GRANTING MOTS. TO DISMISS; DEN. MOT. FOR LEAVE TO FILE; DEN. MOT. FOR DISCOVERY STAY

14

1  alleged misconduct that Plaintiffs are challenging.  The Court cannot conclude on this basis that
2  Mr. Chao has sufficient contacts with this forum.
3      Accordingly, the Court GRANTS Mr. Chao's motion to dismiss for lack of personal
4  jurisdiction.

### D. Jurisdictional Discovery

Plaintiffs request that the Court grant jurisdictional discovery if it dismisses their claims for lack of personal jurisdiction.  *E.g.*, Opp'n to Chao Mot. 18-20.  Jurisdictional discovery is not available as of right, and whether to grant jurisdictional discovery is committed to the Court's discretion.  *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977).  Where a plaintiff's request is based on "little more than a hunch that it might yield jurisdictionally relevant facts," jurisdictional discovery is not warranted.  *Boschetto*, 539 F.3d at 1020.

On this record, the Court cannot conclude that discovery is based on any more than a "hunch."  As to specific jurisdiction, the underlying controversy appears to have exclusively taken place outside of the United States, and the Court sees no allegations even hinting at a meaningful connection between this forum and the wrongs that Plaintiffs allege.  And as to general jurisdiction, many of Plaintiffs' allegations are conclusory, or generalized to the Sina Group as a whole, leaving the Court to guess at whether jurisdictional discovery would be likely to yield information relevant to the jurisdiction of individual defendants.  *See Burri Law*, 35 F.4th at 1213 (jurisdictional inquiry must decouple defendants and consider each individually).  Moreover, to succeed on their alter ego theory, Plaintiffs must show that the California Defendants are alter egos of the Foreign Defendants or Mr. Chao, and the current allegations do not raise any suspicion that either of the California Defendants have more than a typical subsidiary or sister entity relationship with any other Sina entity.  Before the Court will grant jurisdictional discovery, Plaintiffs must raise at least a suggestion that jurisdiction may be appropriate *as to individual defendants*, either through additional allegations or through evidence gathered in their previous

Case No.: 5:21-cv-08019-EJD
ORDER GRANTING MOTS. TO DISMISS; DEN. MOT. FOR LEAVE TO FILE; DEN. MOT. FOR DISCOVERY STAY
15

1    arbitration proceedings against Sina HK.

2    Plaintiffs' request for jurisdictional discovery is DENIED.

### III. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

#### A. Legal Standard

On a motion to dismiss for failure to state a claim, a court assesses whether a plaintiff has pleaded each claim with enough specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Conclusory allegations and bare recitals of the elements of a claim are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). There must be adequate factual matter to allow a court to reasonably infer that the defendant is liable. *Id.*

#### B. Discussion

Plaintiffs have failed to state a claim against the California Defendants for the simple reason that they have not pleaded that the California Defendants participated in the alleged misconduct. The Court has determined that Plaintiffs have not successfully pleaded an alter ego theory, so none of the other Sina entities' actions may be imputed to the California Defendants. The complaint contains no allegations that the California Defendants participated in any RICO predicates, participated in misappropriating trade secrets, made any misrepresentations, or took part in any misconduct that Plaintiffs raise under the UCL. Absent the California Defendants' involvement in the underlying misconduct, declaratory relief is also unavailable against them.

Accordingly, the Court GRANTS the California Defendants' motion to dismiss.

### IV. OTHER MOTIONS

Plaintiffs move to file supplementary materials in support of their opposition to one of the Foreign Defendants' motions to dismiss for lack of jurisdiction. ECF No. 93. They seek to file: (a) an announcement that a subsidiary of Weibo Corporation entered into an agreement to purchase STC from Sina HK, and (b) a diagram from one of Sina Corporation's SEC filings that illustrates some of the hierarchy between various Sina entities. *Id.* Because neither of those

Case No.: 5:21-cv-08019-EJD
ORDER GRANTING MOTS. TO DISMISS; DEN. MOT. FOR LEAVE TO FILE; DEN. MOT. FOR DISCOVERY STAY
16

documents remediates the jurisdictional deficiencies identified above, the Court DENIES AS MOOT Plaintiffs' motion for leave to file supplementary materials.

Defendants also move to stay discovery pending resolution of their motions to dismiss. ECF No. 118.[8] Having now decided Defendants' motions to dismiss, the Court DENIES AS MOOT their motion to stay discovery.

## V. CONCLUSION

Each of the Foreign Defendants' and Mr. Chao's motions to dismiss for lack of personal jurisdiction is GRANTED. The California Defendants' motion to dismiss for failure to state a claim is also GRANTED. Because the Court cannot be sure that Plaintiffs will be unable to correct their jurisdictional and other pleading deficiencies—particularly because Plaintiffs have represented that they have discovery material from the earlier arbitration proceedings that may be relevant to jurisdictional questions here—the Court GRANTS leave to amend. Plaintiffs shall file their amended complaint within **thirty (30) days** of this Order.

The Court DENIES AS MOOT Plaintiffs' motion for leave to file supplementary materials and Defendants' motion to stay discovery pending resolution of the motions to dismiss.

**IT IS SO ORDERED.**

Dated: March 16, 2023

EDWARD J. DAVILA
United States District Judge

---

[8] Defendants styled their request as an administrative motion under Civil L.R. 7-11, but requests for stays of discovery are properly brought as regularly noticed motions subject to Civil L.R. 7-2 through 7-4.

Case No.: 5:21-cv-08019-EJD
ORDER GRANTING MOTS. TO DISMISS; DEN. MOT. FOR LEAVE TO FILE; DEN. MOT. FOR DISCOVERY STAY
17